# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| BONNIE STRAIN, | ) |
| | ) |
|           **Plaintiff**, | ) |
| | ) |
| v. | ) |
| | ) |
| MURPHY OIL USA, INC., | )    Case No. 6:15-cv-3246-MDH |
| | ) |
|           **Defendant.** | ) |
| | ) |

## ORDER

Before the Court is Defendant's Motion to Dismiss or, in the Alternative, To Stay the Proceedings and Compel Arbitration. (Doc. No. 7). Defendant requests that the Court dismiss this action so that the issues raised in Plaintiff's lawsuit can be resolved through arbitration. Plaintiff has filed a response arguing the "arbitration agreement" at issue is not a valid and enforceable contract, and therefore, the matter should not be dismissed or compelled to arbitration. On January 13, 2016, the Court held a hearing and the parties presented evidence on whether a valid arbitration agreement had been formed between the parties. After hearing evidence, and reviewing the record before the Court, the Court finds a valid arbitration agreement was entered into between the parties. Therefore, for the reasons set forth herein, Defendant's Motion to Dismiss is granted.

## BACKGROUND

Plaintiff was employed by Murphy USA from January 29, 2013 through May 23, 2014.[1] Plaintiff testified that on December 28, 2012 she completed an online application for the position of a part-time cashier in West Plains, Mo. Plaintiff testified she does not remember reading an arbitration agreement during her online application. Plaintiff recalls entering her name and social security number, answering several questions regarding her previous work history and also completing a "personality test" during her online application. Plaintiff testified she does not remember every knowingly checking a box that agreed to an arbitration agreement.

Plaintiff further stated the arbitration agreement was not discussed or mentioned during her interview and that she never heard anything regarding the arbitration agreement before or after she accepted the job. She testified she first learned about the alleged arbitration agreement after she filed this lawsuit. Finally, Plaintiff confirmed she received emails from Murphy Oil after completing her online application and interview, but does not remember any arbitration agreement being mentioned or sent to her. She did not retain any of the emails she received. Plaintiff states she was never given a copy of the arbitration agreement.

Dawn Ross, an employee within Murphy USA's IT department, testified regarding the online application process.[2] Ms. Ross testified all job applicants are required to sign an arbitration agreement as part of their application. In fact, if an applicant does not agree to the terms of the arbitration agreement they are not allowed to proceed with the online application. Ms. Ross stated that in order to electronically sign the arbitration agreement an applicant must

---

[1] Plaintiff's Complaint alleges violations of the Fair Labor Standards Act, the Patient Protection and Affordable Care Act, the Americans with Disabilities Act and the Missouri Human Rights Act.

[2] Ms. Ross has been an employee with Murphy USA since July 2013. Her job duties include overseeing the Brass Ring applicant tracking process. Prior to joining Murphy USA, Ms. Ross worked for the vendor that provided this service to Murphy USA and worked specifically on Murphy USA's account.

enter 4 fields - their name, social security number, an acknowledgment they have read the agreement and the date. While the date is automatically populated, the applicant must fill out the remaining information in order to proceed with the application process.

Defendant admitted into evidence the Arbitration Agreement that Plaintiff electronically signed in December 2012.

The Arbitration Agreement states, in part:

> … Company and Individual agree to resolve any and all disputes or claims each may have against the other which relate in any manner whatsoever as to Individual's employment, including but not limited to, all claims beginning from the period of application through cessation of employment at Company…
>
> Individual understands that as consideration for signing this Agreement, the Company agrees to pay all costs of arbitration charged by AAA, other than filing fees, and to be bound by the arbitration procedure set forth in this Agreement.
>
> Company and Individual expressly agree that the Federal Arbitration Act governs the enforceability of any and all of the arbitration provisions of this Agreement…. Questions of arbitrability (that is whether an issue is subject to arbitration under this Agreement) shall be decided by the arbitrator. Likewise, procedural questions which arise out of the dispute and bear on its final disposition are matters for the arbitrator to decide.

Ms. Ross testified she does not believe the arbitration agreement is emailed to the applicant during the application process and she does not believe applicants are given a hard copy of the agreement. However, she testified an applicant can always print the document during the application process.

## DISCUSSION

The Supreme Court has stated that arbitration is a matter of contract and a party cannot be required to submit a dispute to arbitration if she did not agree to submit it. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products,* 359 F.3d 954, 955-56 (8th Cir. 2004); citing, *United Steelworkers v. Warrior &*

3

*Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The Court "must engage in a limited inquiry to determine whether a valid agreement to arbitrate exists between the parties and whether the specific dispute falls within the scope of that agreement. *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc*., 516 F.3d 695, 699 (8th Cir. 2008) (internal citations omitted). There are two gateway questions of "arbitrability" for the Court to decide. *Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Ironworkers, Shopman's Local 493 v. EFCO Corp. & Const. Products,* 359 F.3d at 956 (internal citations omitted). First, "whether the parties have a valid arbitration agreement that binds them is a question for judicial determination." *Id,*, citing, *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-46, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Second, whether "a valid arbitration agreement applies to the subject matter at hand is a question for a court to answer." *Id.,* citing, *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 651-52, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

It is clear federal policy generally favors arbitration and Courts should resolve any doubts regarding issues of arbitrability in favor of arbitration. *Keymer v. Mgmt. Recruiters Int'l, Inc.,* 169 F.3d 501, 504 (8th Cir. 1999) (internal citations omitted). However, the Court must also look to the intent of the contracting parties and determine whether the agreement was reached by consent and not coercion. *Id.* As previously stated, a party cannot be forced to submit to arbitration a dispute that she has not agreed to arbitrate. *Id.*

"Arbitration is a matter of contract, and 'arbitrators derive their authority to resolve disputes only because the parties have agreed' to it." *Express Scripts, Inc. v. Aegon Direct Mktg. Servs., Inc*., 516 F.3d at 700, citing, *AT & T*, 475 U.S. at 648–49, 106 S.Ct. 1415. If an agreement does exist, the Court can determine whether the dispute falls within the scope of that agreement. *United Steelworkers of Am. v. Duluth Clinic, Ltd.,* 413 F.3d 786, 788 (8th Cir. 2005).

4

Further, unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator. *AT & T Technologies, Inc. v. Commcn's Workers of Am.*, 475 U.S. at 649.

### A. CONTRACT FORMATION

First, this Court must determine whether a valid agreement to arbitrate exists. *Newspaper Guild of St. Louis, Local 36047, TNG-CWA v. St. Louis Post Dispatch, LLC*, 641 F.3d 263, 266 (8th Cir. 2011) (internal citations omitted). "Whether an arbitration agreement is valid is a matter of state contract law." *Faber v. Menard, Inc.,* 367 F.3d 1048, 1052 (8th Cir. 2004) (internal citation omitted). Under Missouri law, the elements required to form a valid contract are offer, acceptance, and bargained for consideration. *Greene v. Alliance Auto., Inc.*, 435 S.W.3d 646, 650 (Mo. Ct. App. 2014) (internal citations omitted).

Plaintiff disputes whether a valid contract was formed between Plaintiff and Defendant. Plaintiff argues she did not knowingly enter into the arbitration agreement and therefore a valid contract was never formed.

#### 1. Offer and Acceptance

First, Plaintiff argues she did not accept the terms of the agreement. Plaintiff claims she was unaware of the arbitration agreement, including any specific terms of the arbitration agreement, and therefore she could not accept the contract. Plaintiff cites to *Crestwood Shops, L.L.C. v. Hilkene*, 197 S.W.3d 641, 649 (Mo. Ct. App. 2006) for the position that Plaintiff did not accept the terms of the agreement. In *Crestwood*, the court stated, "The existence of a contract requires both an offer and acceptance." *Id.*, citing *Walker v. Rogers*, 182 S.W.3d 761, 768 (Mo.App. W.D. 2006). Plaintiff's acceptance must be unequivocal and if it includes new or variant terms from the offer is a rejection of the original offer and a counter-offer. *Id.*, citing

5

*Pride v. Lewis*, 179 S.W.3d 375, 379 (Mo.App. W.D. 2005). However, this case is inapplicable to the facts presented here. In *Crestwood*, the court analyzed whether discussion over the terms of a lease constituted counter-offers or acceptance of the terms. Here, there were no "negotiations" regarding the terms of the agreement. Rather, Plaintiff could accept and sign the arbitration agreement in order to continue with her online application, *or* she could refuse to accept the arbitration agreement and discontinue her application for employment.

In this case, the evidence establishes Plaintiff entered her social security number, name and checked the acceptance box that completed an online signature of the arbitration agreement. There was both documentation and testimony that Plaintiff had to complete this document in order to continue with her application. Further, under the Individual's name is a "confirmation" that states "I have received notice that I will be subject to an Arbitration Agreement." Based on the evidence before the Court, the Court finds Plaintiff did in fact sign the online arbitration agreement. *See e.g., Miller v. Quest Diagnostics*, 85 F. Supp. 3d 1058, 1062 (W.D. Mo. 2015) (finding electronic signature valid); *Mead v. Moloney Sec. Co.*, 274 S.W.3d 537, 543 (Mo. Ct. App. 2008); *Int'l Casings Grp., Inc. v. Premium Standard Farms, Inc*., 358 F. Supp. 2d 863, 873 (W.D. Mo. 2005) (Missouri has adopted the Uniform Electronic Transactions Act, Rev.Stat. §§ 432.200–432.295.10, which states if a law requires a signature, an electronic signature satisfies the law).

However, despite the clear requirement that applicants must fill out this information and agree to the arbitration agreement during the online application process, Plaintiff argues even if she did in fact "sign" the agreement, she did not knowingly accept the terms of the agreement and therefore could not enter into a valid agreement. Under Missouri law, courts are reluctant to find a lack of contractual "acceptance" based on this argument. Generally, an individual is

bound by the contracts they sign unless they were induced by fraud, duress, or undue influence. *Greene v. Alliance Auto., Inc.,* 435 S.W.3d at 652 (internal citation omitted).

Here, Plaintiff has not provided any evidence, or even argued, that she signed the online agreement under fraud, duress or undue influence. Therefore, based on the evidence before the Court, regarding whether Plaintiff accepted the terms of the agreement, the Court finds Plaintiff did in fact accept the terms of the agreement when she chose to fill out the information, electronically sign the arbitration agreement, and continue with her online application.

### 2. Consideration

Next, Plaintiff argues a valid arbitration agreement does not exist because the agreement lacks consideration. "In Missouri, legal consideration is essential for the formation of any contract, including one for arbitration." *Jimenez v. Cintas Corp.*, No. ED 101015, 2015 WL 160451, at *3 (Mo. Ct. App. Jan. 13, 2015), reh'g and/or transfer denied (Mar. 11, 2015), transfer denied (May 26, 2015); citing, *Kunzie v. Jack–In–The–Box, Inc*., 330 S.W.3d 476 (Mo.App.E.D. 2010). "Consideration is created by 'either a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party'." *Id., citing, Morrow v. Hallmark Cards, Inc.,* 273 S.W.3d 15, 25 (Mo.App. W.D. 2008) ("When an employer unilaterally imposes a requirement on employees, one might look to see if the employer has also promised anything, if the requirement is purported to be a 'contract.' When a contract is not bilateral (when promises do not flow both ways), there must be good and sufficient consideration flowing from the non-promising party to support the contract."). Where "two considerations are given for a promise, one of them being legally sufficient to support a promise and the other not sufficient, the promise is enforceable." *Earl v. St. Louis Univ*., 875 S.W.2d 234, 236–237 (Mo.App.E.D. 1994) (internal citation omitted).

7

First, Defendant's argument that an offer of at-will employment may constitute consideration for contract formation is simply not supported by the law. An offer of at-will employment, or the continuation of at-will employment, is simply not a source of consideration under Missouri contract law. See, *Baker v. Bristol Care, Inc.,* 450 S.W.3d 770, 775 (Mo. 2014), reh'g denied (Oct. 28, 2014*)*; *Baker Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d 429, 438 (Mo. Ct. App. 2010); *Morrow v. Hallmark Cards, Inc*., 273 S.W.3d at 26; and *Jimenez v. Cintas Corp.,* 2015 WL 160451, at *4 ("As stated in *Morrow,* terms and conditions of at-will employment are unilaterally imposed on employees, so they are not enforceable at law as contractual duties and will not create consideration.") (internal citations omitted).

Therefore, the Court looks to whether there is another source of consideration to create a valid contract. Defendant argues the mutuality of promises to arbitrate constitutes consideration for the formation of a valid arbitration agreement. A contract that contains mutual promises imposing a legal duty on both parties constitutes a bilateral contract and is therefore supported by sufficient consideration. *Motormax Fin. Servs. Corp. v. Knight*, 474 S.W.3d 164, 169 (Mo. Ct. App. 2015) (internal citations omitted); see also *Frye v. Speedway Chevrolet Cadillac*, 321 S.W.3d at 442 (If a party retains the right to cancel a contract, or to avoid a promise, it is an unenforceable, illusory promise. A contract is illusory where a party has in his power to keep his promise and yet escape performance of anything detrimental to himself or beneficial to the promisee.). On the other hand, if the contract purports to contain mutual promises, but instead allows one of the parties to retain a unilateral right to modify or alter the agreement the purported contract lacks valid consideration. *Id.* (citation omitted). The alleged mutual promises to arbitrate must be binding and not illusory. *Id*. "A promise to arbitrate is illusory when the agreement promises mutuality of arbitration, but effectively allows one party to proceed in court

8

on its claims while the other party is required to resolve its claims by arbitration and is prohibited from taking any action in court." *Id.*

Here, the parties agree Plaintiff's employment was at-will. As a result, Defendant could terminate Plaintiff's employment at any time, while at the same time, Plaintiff could do the same. As stated above, the at-will employment is not consideration for the arbitration agreement. The arbitration agreement contains the following language regarding the parties' "promises" to arbitrate:

> This Agreement mutually binds Individual and Company to arbitrate any and all disputes between them as set forth herein. Individual also is bound to arbitrate any related claims he/she individually may have arising out of or in the context of their employment relationship against any manager of the company. Conversely, managers have signed similar arbitration agreement and thereby are bound to arbitrate any related claims they individually may have against Individual arising out of or in the context of their employment relationship.
>
> Individual understands that as consideration for signing this Agreement, the Company agrees to pay all costs of arbitration charged by AAA, other than filing fees, and to be bound by the arbitration procedure set forth in this Agreement.
>
> By signing this Agreement, Individual and the Company waive their right to commence, be a party to, or act as a class member in, any class or collective action in any court action against the other party relating to employment issues.
>
> INDIVIDUAL AND COMPANY UNDERSTAND THAT, ABSENT THIS AGREEMENT, THEY WOULD HAVE THE RIGHT TO SUE EACH OTHER IN COURT, TO INITIATE OR BE A PARTY TO A GROUP OR CLASS ACTION CLAIM, AND THE RIGHT TO A JURY TRIAL, BUT, BY EXECUTING THIS AGREEMENT, BOTH PARTIES GIVE UP THOSE RIGHTS AND AGREE TO HAVE ALL EMPLOYMENT DISPUTES BETWEEN THEM RESOLVED BY MANDATORY, FINAL AND BINDING ARBITRATION. ANY EMPLOYMENT RELATIONSHIP BETWEEN INDIVIDUAL AND COMPANY IS TERMINABLE AT-WILL, AND NO OTHER INFERENCE IS TO BE DRAWN FROM THIS AGREEMENT.

Here, unlike the cases in which the employer reserved the right to amend the terms of the agreement, there is no language reserving any right for Defendant to amend the terms of this arbitration agreement. In fact, in the agreement Defendant did not reserve any right to bring

9

claims against Plaintiff outside the terms of the arbitration agreement that applied to both parties, nor did it reserve the right to amend to alter the terms. Further, Defendant did not create an exception, or reservation from the agreement, for any claims upon which it would not be bound by the terms of the agreement. Therefore, the Court finds a review of the plain language of the arbitration agreement establishes that in this case the agreement contains mutual promises to arbitrate that apply equally to both parties, and does not reserve any rights specific to the employer that do not apply equally to the employee.[3]

### 3. Conscionability

Finally, Plaintiff argues the terms of the contract, if one has been found to exist, are unconscionable and therefore cannot be enforced. Plaintiff argues because the signed agreement is unconscionable there was no valid contract formed. Plaintiff bases this argument on the following: the agreement was drafted by Defendant; she was not given an opportunity to negotiate any terms; there was a disparity of bargaining power; and she was "merely filling out an electronic application on a computer for an hourly position as a gas station cashier."

The Supreme Court of Missouri has made clear, "lack of negotiation and the adhesive nature of a contractual agreement are factors to consider in determining unconscionability, but 'post-*Concepcion,* a court should not invalidate an arbitration agreement in a consumer contract simply because it is contained in a contract of adhesion or because the parties had unequal bargaining power, as these are hallmarks of modem consumer contracts generally." *State ex rel. Hewitt v. Kerr*, 461 S.W.3d 798, 809-10 (Mo. 2015), reh'g denied (June 30, 2015) (internal citations omitted) (finding arbitration agreement between employee and employer was supported by consideration and obligated both parties to arbitrate). "Mere inequality in bargaining power

---

[3] Defendant also argues that its agreement to pay all costs, other than filing fees, is an additional consideration for the contract.

... is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." *Id.* (internal citations omitted).

Here, like in *Hewitt,* Plaintiff does not allege she "was coerced or defrauded" into agreeing to the arbitration clause. Further, she has not provided any evidence that Defendant abused its power in formation of the arbitration agreement. As a result, the Court finds Plaintiff agreed to arbitrate any alleged claims she may have when she completed her online application process, which included agreeing to arbitrate any such claims. As set forth above, the Court finds the agreement is supported by mutual promises which constitute consideration for formation of the contract and obligates both Plaintiff and Defendant to arbitrate claims. Plaintiff has not provided any evidence of unconscionability and the Court finds there is a valid and enforceable agreement to arbitrate.

### B. ARBITRATION

As set forth above, the Court finds that a valid arbitration agreement exits. Further, a review of Plaintiff's allegations contained in her Complaint reflect claims that would fall under the scope of the arbitration agreement regarding a dispute or claim that arises out of Plaintiff's employment at Murphy USA. The arbitration agreement states that whether a claim is subject to arbitration under the agreement is an issue for the arbitrator. Nonetheless, the Court has found that the arbitration agreement is a valid and enforceable agreement and therefore, Plaintiff's claims should be submitted to arbitration under the Federal Arbitration Act. Defendant argues this case should be dismissed, rather than stayed, because Plaintiff's claims will be resolved in arbitration. Plaintiff does not address this issue.

Generally, the FAA requires a federal district court to stay an action pending an arbitration rather than dismissing it. *Green v. SuperShuttle Int'l, Inc.,* 653 F.3d 766, 769 (8th Cir.

2011); citing 9 U.S.C. § 3 (stating district courts "shall ... stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement"). However, district courts may rely upon a judicially-created exception to this general rule and in their discretion dismiss Plaintiff's cause of action, rather than stay it, when it is clear the entire controversy between the parties will be resolved in the arbitration. *Id*. at 769-770 (citations omitted); see also, *SPBR Holdings, Inc. v. KWAL-Howells, Inc*., No. 13-CV-0543-W-FJG, 2013 WL 6795923, at *7 (W.D. Mo. Dec. 23, 2013); *Rosemann v. Sigillito*, 877 F. Supp. 2d 763, 777 (E.D. Mo. 2012). Here, the Court finds no purpose to staying this case. It appears all of Plaintiff's claims are subject to the arbitration agreement and therefore will be resolved by arbitration after the dismissal of this action.

## CONCLUSION

**WHEREFORE,** for the reasons stated herein, Defendant's Motion to Dismiss (Doc. No. 7) is **GRANTED.** The Court finds that all the issues raised by Plaintiff are subject to arbitration and therefore **ORDERS** that Plaintiff's Complaint is dismissed.

**IT IS SO ORDERED.**

DATED: February 9, 2016

                            */s/ Douglas Harpool*
                            **DOUGLAS HARPOOL**
                            **UNITED STATES DISTRICT JUDGE**